UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL L. MATYA, JR.,

                       Plaintiff,

                                               **Hon. Hugh B. Scott**

           v.

                                               05CV2A

                                               **Report**
                                                 **&**
UNITED REFINING COMPANY,               **Recommendation**
UNITED REFINING COMPANY OF
PENNSYLVANIA,

                       Defendants.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 6, Order of Mar. 8, 2005). The instant matter before the Court is defendants' joint motion (Docket No. 25) for summary judgment[1].

---

[1] In support of this motion, defendants filed a memorandum of law, Docket No. 27; appendix of unreported cases, Docket No. 35; statement of facts pursuant to Local Civil Rule 56.1, Docket No. 28; affidavits from defense counsel, Docket No. 26, Frank Bartela, regional manager of United Refining Company of Pennsylvania, Docket No. 29, Jessica Davis, Area Manager of United Refining Company of Pennsylvania, Docket No. 30, James Austin, store manager for United Refining Company of Pennsylvania, Docket No. 31, Eric Gerardine, another store manager for United Refining Company of Pennsylvania, Docket No. 32, Peter Conley, vice president of retail marketing for United Refining Company of Pennsylvania, Docket No. 34, and Paul Becker, regional manager of Perkins Restaurants, Docket No. 33, each with exhibits. They also submitted their attorney's reply affidavit, Docket No. 56, and reply memorandum of law, Docket No. 57.

    In opposition, plaintiff submitted his affidavit, Docket No. 49; his father's affidavit, Docket No. 50; his attorney's affidavit with exhibits, Docket No. 48; a statement of undisputed facts, Docket No. 52; a counter-statement of disputed facts, Docket No. 53; and memorandum of

## BACKGROUND

*Complaint and Proceedings*

This is a Title VII and New York State Human Rights Law action against defendants United Refining Company (hereinafter "URC") and United Refining Company of Pennsylvania ("URCP") (see Docket No. 1, Compl.). Plaintiff was employed in defendants' Kwik Fill stores from March 1, 2001, through June 20, 2002 (id. ¶¶ 4, 15-16). He filed a charge of discrimination with the Equal Employment Opportunity Commission on June 20, 2003 (id. ¶ 12). Plaintiff, who received consistently acceptable reviews, worked an average of 30 hours a week until a female employee whom he trained was given plaintiff's hours (id. ¶¶ 17-18). Plaintiff alleges that he was forced to quit on June 2002 and move from Erie, Pennsylvania, to Olean, New York, where he applied to work at the Olean Kwik Fill store (id. ¶ 19). He was not hired at that store, plaintiff alleges, because the district supervisor for the Erie Kwik Fill gave a negative recommendation to the Olean management (id. ¶ 20).

Plaintiff alleges in his first cause of action that he was discriminated against in retaliation for his complaining about and opposing defendants' gender discrimination in employment, in violation of Title VII (id. ¶ 23). In the second cause of action, plaintiff alleges violation of the New York State Human Rights Law by the same conduct alleged in the first cause of action (id. ¶¶ 25-26). He seeks compensatory and punitive damages and a jury trial of issues triable thereby (id. at fifth unnumbered page).

Defendants answered on February 25, 2005 (Docket No. 5).

---

law, Docket No. 51. The Court declined plaintiff's request to submit a sur-reply, Docket No. 58.

*Defendants' Motion for Summary Judgment*

Defendants filed their joint motion for summary judgment. URC operates solely as a refinery while URCP is the retailer, operating gasoline stations and stores (Kwik Fill stores), each company has its own employees and employment policies (Docket No. 28, Defs. Statement ¶ 1). Defendants allege that URC is no way involved in the employment decisions surrounding plaintiff, an employee of URCP (id. ¶¶ 1, 3).

According to defendants, plaintiff was employed by URCP at its Harborcreek, Pennsylvania, store (also known as location M128) on May 2, 2001, as a part-time full service attendant (id. ¶ 3). Duties of an attendant include accepting payments and providing change (id. ¶ 4). During plaintiff's employment, cash shortages were noticed in the store, and one customer complained to management that plaintiff argued with him and a second customer complained about a dispute with plaintiff over the amount of change due (id. ¶ 5; but cf. Docket No. 53, Pl. Counter-Statement of Disputed Facts ¶ 1 (denying that any shortage was attributable to plaintiff)). Plaintiff, in fact, contends that he never received any warning that he was responsible for cash shortages at the two stores where he worked (Docket No. 52, Pl. Statement of Undisputed Facts ¶ 1).

On or about May 29, 2002, area manager Frank Bartela reassigned plaintiff to the Erie, Pennsylvania, store (or location M8), due to remodeling at the Harborcreek store (Docket No. 28, Defs. Statement ¶ 8; Docket No. 29, Bartela Aff. ¶ 10). Both the M128 and M8 stores had different manpower hour needs and required number of employees (Docket No. 28, Defs. Statement ¶ 16). The Harborcreek store M128 was a kiosk operation, while the Erie store M8 was a full-size convenience store, with shorter full service hours and where the full service

3

attendants would take payments to the cashier (Docket No. 29, Bartela Aff. ¶ 11; Docket No. 28, Defs. Statement ¶ 13) rather than also serve as cashiers. Plaintiff, on June 2002, advised store manager Eric Gerardine that he needed to work more than the 6 to 20 hours offered at the M8 store (Docket No. 52, Pl. Statement of Undisputed Facts ¶ 3). During the weeks plaintiff was assigned to the M8 store, no additional manpower hours were necessary (Docket No. 31, Gerardine Aff. ¶ 9; Docket No. 28, Defs. Statement ¶ 17; Docket No. 52, Pl. Statement of Undisputed Facts ¶ 4).

Defendants contend that plaintiff did not advise management at M8 of his intention not to return to work there (see Docket No. 28, Defs. Statement ¶¶ 41-42; but see Docket No. 53, Pl. Counter-Statement of Disputed Facts ¶¶ 5, 6 (plaintiff provided written notice to Gerardine of plaintiff's intention to not work at M8), 7, 9 (plaintiff claims that he provided notice)). Gerardine believed that plaintiff was just moving his possessions from Erie to Olean and was not changing his residence (Docket No. 32, Gerardine Aff. ¶ 25, Ex. J) and did not consider plaintiff's comments as acceptable notice of resignation (id. ¶ 26).

Defendants argue that plaintiff's claims were limited to retaliation under Title VII and the New York State Human Rights Law. URC never employed plaintiff and therefore should be dismissed as a party. Defendants contend that plaintiff did not exhaust his administrative remedies on his retaliation claims or that those claims are time barred. Under Title VII, defendants conclude that plaintiff fails to establish a prima facie case of retaliation and that URC and URCP had legitimate, non-retaliatory reasons for the employment actions and plaintiff can not show that these reasons were merely pretext. Finally, as goes plaintiff's Title VII claims,

defendants argue that plaintiff's state Human Rights Law claims also fails (Docket No. 27, Defs. Memo. of Law).

The Court entered a briefing schedule for this motion, in which responses were due by July 31, 2006, any reply by August 28, 2006, and the motion was deemed submitted as of August 28, 2006, without oral argument (Docket No. 36). Separately, the Court allowed defendants to file an oversize memorandum of law (Docket No. 24). Plaintiff later moved for an extension of time to respond (Docket No. 37), defendants opposed, but the Court granted the extension. Responses were then due by August 30, 2006, with any reply by or before September 27, 2006, and the motion deemed submitted without oral argument on September 27 (Docket No. 39).

*Plaintiff's Response*

Plaintiff contends that he set forth sufficient facts for a finder of fact to conclude that he was engaged in protected activities, that he was subjected to an adverse employment action, and that there was a causal connection between the protected activities and the adverse employment action, and that defendants' reasons were pretextual, establishing Title VII and New York State Human Rights Law claims (Docket No. 51, Pl. Memo. at 2). He concludes that defendants are not entitled to judgment as a matter of law (id.).

Plaintiff contends that he was constructively discharged (Docket No. 53, Pl. Counter-Statement of Disputed Facts ¶ 8). He argues that URCP has rehired former employees who failed to give written notices for the prior terminations and who had numerous written warnings during their previous tenures with URCP (id. ¶ 11).

Plaintiff claims that he worked for over 35 hours per week at M128 until being assigned to M8 store (Docket No. 52, Pl. Statement of Undisputed Facts ¶ 2), when his hours were reduced to 6-20 hours (id. ¶ 3). Despite not requiring additional manpower hours at the M8 store, defendants hired Tina Hallman as additional staff on June 7, 2002, working as a cashier/attendant and pump attendant (id. ¶ 5). Plaintiff claims that he was told by Gerardine that, once Hallman was trained, plaintiff would become a cashier; instead, the cashier position went to Hallman (id. ¶ 6). Plaintiff complained about this broken promise to Gerardine and Gerardine reacted by trying to find additional hours for plaintiff to work at another location (id. ¶¶ 8, 9). Plaintiff claims that, before June 19, 2002, Gerardine assisted him in attempting to transfer to the Olean store and that Gerardine was aware of plaintiff's intention to move to New York and that Gerardine had advised Bartela of that fact (id. ¶ 10; Docket No. 29, Bartela Aff., Ex. F, Bartela EBT Tr. at 51). Plaintiff moved to Olean and applied to URCP's Olean store but was told that there were no openings (Docket No. 52, Pl. Statement of Undisputed Facts ¶ 12).

Plaintiff applied for unemployment benefits in July 2002 and was initially denied (id. ¶ 13). He appealed, and Gerardine and Bartela testified against him receiving unemployment compensation, stating that a job and work were available for plaintiff in Erie if he chose to return (id. ¶¶ 13, 14). The referee reversed the denial of unemployment compensation, based upon plaintiff's testimony regarding the loss of his home and his reduced hours at Kwik Fill (id. ¶ 15).

In September 2002, plaintiff applied again for the Olean store and the manager there, Jim Austin, checked with the area manager (Jessica Davis) before deciding to rehire a former URCP employee (id. ¶¶ 16-17). On October 3, 2002, plaintiff contacted Austin and learned that Austin

could not hire plaintiff because of plaintiff's reputation as an employee (being a problem for managers and called off from scheduled work) (id. ¶ 20).

*Plaintiff's Motion to Compel*

According to the Scheduling Order (Docket No. 8), motions to compel discovery were due thirty days before the discovery deadline (then of December 16, 2005). The Scheduling Order was amended by numerous stipulations (Docket Nos. 15, 18, 19, 22), which the Court so ordered (Docket Nos. 16, 20, 23), where the latest discovery deadline was May 1, 2006, with the Court declaring that the last extension was the final one the Court would entertain (Docket No. 23).

Partly in response to defendants' motion for summary judgment, plaintiff now essentially cross-moved to compel responses to two document demands, for payroll records of 21 Kwik Fill locations in Erie, Harborcreek, and North East, Pennsylvania, and Olean, New York, for employees at each location from 2001 through 2006 (Docket No. 40). In order to consider plaintiff's motion within the schedule for the defense motion, responses to plaintiff's motion were due by August 22, 2006, with any reply by August 25, 2006, and the motion deemed submitted without oral argument on August 25 (Docket No. 41). The Court denied plaintiff's motion (Docket No. 47).

## **DISCUSSION**

I.    Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

  The Local Civil Rules of this Court require that movant and opponent each submit statements of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56.1(a). Movant is to submit facts in which there is no genuine issue, id., while the opponent submits a statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56.1(b). "Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure 56(e)," with citations identifying

"with specificity" the relevant page or paragraph of the cited authority, id. R. 56.1(d). All material facts stated in movant's statement that are not controverted by opponent's counter-statement shall be deemed admitted, id. R. 56.1(c). These Rules do not state what happens if an opponent fails to cite authority in support of its counter-statement of disputed facts. The purpose of these statements, and the appendix of supporting evidence, id. R. 56.1(d), is to summarize and highlight for the Court the material issues and whether the parties believe they are in dispute.

Plaintiff submitted a Statement of Undisputed Facts (Docket No. 52) and a Counter-Statement of Disputed Facts (Docket No. 53) which in general did not contain citations to admissible evidence to support plaintiff's factual assertions (but cf. Docket No. 52 ¶¶ 1, 9, 10, 11, 17, 18, 19 (instances citing evidence to support statements); Docket No. 53 ¶ 8 (instance citing evidence to support statements)). Thus, several key facts alleged by plaintiff (including the gender basis for the discrimination he claims led to his retaliatory discharge and plaintiff's attempts to regain employment following his move to Olean) lack substantiation in the record.

II.     Title VII Retaliation Standard

An employee alleging a violation of Title VII can prove employment discrimination under a three-step, burden shifting test established in McDonnell Douglas v. Green, 411 U.S. 792, 802-04 (1973). First, plaintiff has the burden of proving "by a preponderance of the evidence a prima facie case of discrimination," Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). In general, to establish a prima facie case, the plaintiff must show (a) membership in a protected class; (b) qualification for the position; (c) an adverse employment action; and (d) circumstances that give at least minimal support to an inference of discrimination, Fagan v. New York State Elec. & Gas Corp., 186 F.3d 127, 132 (2d Cir. 1999). Plaintiff's burden is a minimal

one, she "creates a presumption that the employer unlawfully discriminated against the employee" when she sets forth facts sufficient to establish a prima facie case, Burdine, supra, 450 U.S. at 254.

If plaintiff presents a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reasons for the [adverse employment action]," id. at 253 (quoting McDonnell Douglas, supra, 411 U.S. at 802). If the employer presents admissible evidence supporting that legitimate reason, the presumption of discrimination created by the prima facie case is rebutted, Burdine, supra, 450 U.S. at 256. At this point, the burden shifts back to plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext of discrimination," id. at 253. (Docket No. 23, Pl. Memo. at 9-10; Docket No. 15, Def. Memo. at 7.)

This standard and burden shifting under McDonnell Douglas applies to sex discrimination claims under the New York Human Rights Law, Ferrante v. American Lung Ass'n, 90 N.Y.2d 623, 629, 665 N.Y.S.2d 25, 28-29 (1997); Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997), and for convenience (and in the absence of any alleged standard to the contrary) the same analysis will be applied to plaintiff's state law claims as her Title VII claims.

For an alleged retaliation, plaintiff must show that he participated in a protected activity known to defendant, that he suffered an employment action disadvantageous to him, and there was a causal connection between the protected activity and the employment action, Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001); see McDonnell Douglas, supra, 411 U.S. at 802.

III.     Plaintiff's Employer

A threshold matter is whether both defendants should be parties to this action. Plaintiff alleges that he worked for both URCP and URC (Docket No. 1, Compl. ¶¶ 6-7). Defendants counter that plaintiff never worked for the refiner URC (Docket No. 27, Defs. Memo. at 13-15; Docket No. 28, Defs. Statement ¶¶ 1-2). Plaintiff does not dispute that he never worked for URC or the lack of involvement of URC in plaintiff's employment.

It is clear from the record that plaintiff worked for the retailer URCP, not the refiner URC, in URCP's Kwik Fill stores. Therefore, plaintiff's claims against defendant URC should be dismissed and that defendant granted summary judgment on this basis. Hereinafter, the arguments of only URCP will be considered.

IV.     Plaintiff's Retaliation Claims

    A.     Exhaustion of Administrative Remedies

Defendant URCP argues that plaintiff did not exhaust his administrative remedies prior to commencing this Title VII action as to plaintiff's possible claims for retaliation by reducing his hours or constructive discharge or termination due to his complaints (Docket No. 27, Defs. Memo. at 15-17). URCP contends that plaintiff's claim of unlawful retaliation is not reasonably related to his EEOC charge (id. at 16; see Docket No. 26, Def. Atty. Aff. ¶ 8, Ex. B), which alleged discrimination between September and October 2002 in not rehiring him and furnishing negative recommendation. However, the Complaint alleges that his hours did not improve, that he was forced to quit (Docket No. 1, Compl. ¶¶ 18-19), and that this was not stated in the EEOC charge (Docket No. 27, Defs. Memo. at 16-17).

11

B.     Statute of Limitations

URCP also contends that plaintiff's claim is time barred (Docket No. 27, Defs. Memo. at 18-20), 42 U.S.C. § 2000e-5(e). Plaintiff filed his EEOC charge on June 20, 2003, alleging the earliest act of discrimination on September 12, 2002 (Docket No. 26, Defs. Atty. Aff. Ex. B). Thus, plaintiff's claims surrounding reduced hours and a constructive discharge in the spring of 2002 are time barred (Docket No. 27, Defs. Memo. at 19). The EEOC, in fact, restricted its investigation to the failure of the Olean store to hire plaintiff (Docket No. 26, Defs. Atty. Aff. ¶ 13, Ex. C; Docket No. 27, Defs. Memo. at 19). URCP contends that the reduction in hours and constructive discharge were discrete acts from the subsequent refusal to hire him at the Olean store (Docket No. 27, Defs. Memo. at 19-20).

C.     Merits

URCP argues that plaintiff has not established a <u>prima facie</u> case of retaliation and that URCP had legitimate, non-retaliatory reasons for not hiring plaintiff for its Olean store (Docket No. 27, Defs. Memo. at 20-30). URCP contends that plaintiff has not established a causal connection between his protected activity and an adverse employment action, required to state a retaliation claim under Title VII. The actions involved distinct sets of management, the Erie management, where the alleged protected activity occurred, and the Olean management, which declined to hire plaintiff. URCP argues that the Olean management was unaware of the protected activity in Erie, the alleged retaliation for complaining about the differing treatment plaintiff faced as opposed to his female co-worker. (Docket No. 56, Defs. Atty. Reply Aff. ¶¶ 3-5, 7-8.) Further, plaintiff fails to present evidence of either the Olean management or their

superiors having knowledge of the protected activity in Erie (Docket No. 57, Defs. Reply Memo. at 6).

Plaintiff has not produced evidence (or shown that a factual issue exists) as to whether the Olean decision makers (either the hiring managers or their superiors) were aware of plaintiff's protected activity in Erie, that is, his complaints about differing treatment for a female co-worker and himself.  Plaintiff's EEOC charge involves the bad reference he received from the Erie management that plaintiff believed lead to him not being hired in Olean.  Thus, plaintiff has not shown that he participated in a protected activity known to defendant, here the managers in Olean who purportedly discriminated against him by not hiring him.

The key factual issue is whether plaintiff gave sufficient notice of his resignation, hence making the denial of re-employment with URCP's Olean store suspicious.  Plaintiff believes that he gave adequate notice from his conversations with Gerardine (Docket No. 52, Pl. Statement of Undisputed Facts ¶ 10).  Gerardine, however, did not believe plaintiff was moving out of Erie and did not conclude from his conversations with plaintiff that plaintiff was resigning (Docket No. 32, Gerardine Aff. ¶¶ 25, 26, Ex. J).  URCP's policy called for "at least 10 days written notice or other such notice acceptable to the Company, prior to [voluntary] termination" (Docket No. 29, Bartela Aff. ¶ 9, Ex. C).  Plaintiff's oral statements, broadly construed as notice, do not satisfy this policy.  Plaintiff has not come up with proof that similar oral notice is "acceptable" notice to URCP to constitute notice to preserve his right to reapply with the company, despite attempts to obtain discovery about other former employees who may have been rehired by URCP.

The other previous claims, arising from his final days at the Erie stores, were not preserved since they were not alleged in the EEOC charge and are time barred.

V.     New York State Human Rights Law Claims

Finally, URCP argues that, if the Title VII claims against it are dismissed, then the Court should not entertain plaintiff's New York State Human Rights Law claims under its supplemental jurisdiction (Docket No. 27, Defs. Memo. at 31). As stated above, the standard for the Title VII claim is the same as for the Human Rights Law. Therefore, for the same reasons for denial of the Title VII claim, plaintiff has not established a New York State Human Rights Law claim.

**CONCLUSION**

Based upon the above, it is recommended that defendants' motion (Docket No. 25) for summary judgment be **granted as to defendant United Refining Company** (on the grounds that plaintiff did not establish that he ever worked for that company) and **granted as to defendant United Refining Company of Pennsylvania** on the merits.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
November 16, 2006